```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____
                             :
MUSTAFA OZSUSAMLAR,          :       Hon. Noel L. Hillman
                             :
            Petitioner,      :       Civil No. 13-7288 (NLH)
                             :
       v.                    :
                             :           OPINION
J.T. SHARTLE,                :
                             :
            Respondent.      :
_____     :
```

APPEARANCES:

    MUSTAFA OZSUSAMLAR, #18188-050
    FCI Allenwood
    P.O. Box 2000
    White Deer, PA 17887
        *Petitioner Pro Se*

    KRISTIN LYNN VASSALLO, ASSISTANT UNITED STATES ATTORNEY
    PAUL J. FISHMAN, UNITED STATES ATTORNEY
    970 Broad Street
    Newark, NJ 07102
        *Attorney for Respondent*

HILLMAN, District Judge:

While he was incarcerated at FCI Fairton in New Jersey, Mustafa Ozsusamlar filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging the calculation of his projected release date by the Bureau of Prisons ("BOP"). The BOP filed an Answer, together with a declaration and several exhibits. Petitioner filed a Reply. After reviewing the arguments of the parties, the Court finds that the BOP did not abuse its discretion and will dismiss the Petition.

I.  BACKGROUND

On December 5, 2001, federal authorities arrested Petitioner in the District of Columbia and filed a criminal complaint against him in the United States District Court for the District of Columbia charging him with knowingly possessing an identification document (other than one issued lawfully for the use of the possessor), authentication feature, or a false identification document, with the intent such document or feature to be used to defraud the United States, in violation of 18 U.S.C. § 1028(a)(4).  See United States v. Ozsusamlar, Crim. No. 01-0466 (EGS) (D.D.C. filed Dec. 21, 2001).  On December 6, 2001, a United States Magistrate Judge ordered Petitioner detained without bond.[1]  A grand jury in the District of Columbia returned an indictment against him on December 21, 2001, and thereafter returned two superseding indictments.  On June 5, 2003, over Petitioner's objection, the District Judge ordered that he be sent, forthwith, to the Southern District of New York to face trial in United States v. Ozsusamlar, Crim. No. 02-0763 (KMW)-3 (S.D.N.Y. filed June 13, 2002).

---

[1] On December 17, 2001, the Magistrate Judge set bond at $500,000 and on April 11, 2002, the District Judge ordered him held without bond.

2

On May 14, 2004, a jury in the Southern District of New York found Petitioner guilty of conspiracy to bribe a public official, bribery of a public official, conspiracy to commit fraud in connection with identification documents, fraud in connection with identification documents, conspiracy to transport illegal aliens, and transportation of illegal aliens. On February 1, 2007, Judge Kimba M. Wood sentenced Petitioner to 235 months in prison and three years of supervised release.  On the government's motion, by order entered on February 6, 2007, Judge Emmet G. Sullivan dismissed the charges pending against Petitioner in the United States District Court for the District of Columbia.  On May 22, 2008, the Second Circuit affirmed the conviction and sentence imposed by Judge Wood. See United States v. Ozsusamlar, 278 F. App'x 75 (2d Cir. 2008).[2]

In the meantime, on October 6, 2005, federal authorities filed a second criminal complaint against Petitioner in the Southern District of New York.  See United States v. Ozsusamlar, Crim. No. 05-1077 (PKL).  A grand jury returned an indictment on January 4, 2006, and a superseding indictment on January 4,

---

[2] Petitioner filed a motion to vacate, pursuant to 28 U.S.C. § 2255, which Judge Wood denied on January 7, 2010. See United States v. Ozsusamlar, 2010 WL 69106 (S.D.N.Y. Jan. 7, 2010).

2006. On April 20, 2006, a jury found Petitioner guilty of conspiracy to commit murder for hire, murder for hire, and conspiracy to commit extortion. On November 8, 2007, District Judge Peter K. Leisure sentenced Petitioner to an aggregate term of 188 months in prison, to run consecutively to the 235-month term of imprisonment imposed by Judge Wood in Crim. No. 02-0763 (KMW). On October 20, 2009, the Second Circuit affirmed the second conviction and sentence imposed by Judge Leisure. See United States v. Ozsusamlar, 349 F. App'x 610 (2d Cir. 2009).

On January 15, 2013, Petitioner filed an administrative remedy request with the Warden of FCI Fairton challenging the failure to give him credit against his second federal sentence from October 5, 2005, on the ground that Judge Leisure ordered it. Warden Shartle denied administrative relief on February 11, 2013. Petitioner appealed to the Regional Director, arguing that he should receive credit for time served from October 5, 2005, through November 8, 2007. The Regional Director denied the appeal as follows:

> [O]n February 1, 2007, you were sentenced in the United States District Court for the Southern District of New York to 235 months. On November 8, 2007, you were sentenced . . . to a 188-month consecutive term. The two terms were aggregated by adding the consecutive terms pursuant to 18 U.S.C. 3584(c), to a total term of 423 months. Prior custody credit is then awarded to the aggregate term. In your case, you

4

>were awarded 1884 days of prior custody credit, from
>December 5, 2001, through January 31, 2007. Your
>aggregate sentence began on February 1, 2007. Time
>spent in custody after February 1, 2007, has been
>awarded toward your aggregate term as time spent
>serving your sentence. Double credit is prohibited by
>18 U.S.C. 3585(b), and your sentence has been computed
>correctly.

(Response of J.L. Norwood, Regional Director, dated Apr. 3, 2013, ECF No. 7-3 at 15.)

Petitioner timely appealed to the Central Office. On May 3, 2013, Harrell Watts, Administrator of National Inmate Appeals, denied the appeal on the ground that the sentence was computed in accordance with federal law and BOP Program Statement 5880.28. (ECF No. 7-3 at 17-18.)

Petitioner, who was incarcerated at FCI Fairton in New Jersey, filed the present § 2241 Petition (under the mailbox rule) on November 30, 2013. He acknowledges that the second term of 188 months was ordered to run consecutively to the 235-month term but contends that at the November 8, 2007, sentencing on the murder for hire offenses Judge Leisure intended to give him double credit for the time since he was arrested on December 5, 2001, until his second sentencing on August 8, 2007. Petitioner relies on the sentencing transcript attached to the Petition, arguing that, even though Judge Leisure ordered the second sentence to run consecutively to his first sentence, "it

5

was the trial court's intent to run petitioner's sentence from the date of his arrest as opposed to the date that his prior sentence ends."  (ECF No. 1 at 6.)  In the Answer, the government argues that the BOP correctly calculated Petitioner's release date.

## II.  DISCUSSION

A.  <u>Jurisdiction</u>

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody" and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); <u>Maleng v. Cook</u>, 490 U.S. 488, 490 (1989).  This Court has subject matter jurisdiction under § 2241 to consider the instant Petition because Petitioner challenges the calculation of his sentence under federal law and he was incarcerated in New Jersey at the time he filed the Petition.  <u>See</u> <u>Blood v. Bledsoe</u>, 648 F.3d 203 (3d Cir. 2011); <u>Vega v. United States</u>, 493 F.3d 310, 313 (3d Cir. 2007); <u>Woodall v. Fed. Bureau of Prisons</u>, 432 F.3d 235, 241

(3d Cir. 2005); Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1991).

B.  Standard of Review

Insofar as the BOP reviewed Petitioner's request challenging the calculation of his sentence, this Court's review is limited to the abuse of discretion standard.  See Galloway v. Warden of FCI Fort Dix, 385 F.App'x 59, 61 (3d Cir. 2010); Barden, 921 F.2d at 478.  Under this standard, a reviewing court must find that the actual choice made by the agency was neither arbitrary nor capricious.  See C.K. v. N.J. Dep't of Health & Human Services, 92 F.3d 171, 182 (3d Cir. 1996).  "[A]gency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'...." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 414 (1971), overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977) (quoting 5 U.S.C. § 706(2)(A)).  To make a finding that agency action was not arbitrary or capricious, or an abuse of discretion, a court must review the administrative record that was before the agency, and "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . .  Although this inquiry into the facts is to

be searching and careful, the ultimate standard of review is a narrow one.  The Court is not empowered to substitute its judgment for that of the agency." Overton Park, 401 U.S. at 416. Reversal of agency action is warranted "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if [the court] simply cannot evaluate the challenged agency action on the basis of the record before [it]." C.K., 92 F.3d at 184 (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)).

C.  Analysis

The United States Code specifies when a federal sentence commences, see 18 U.S.C. § 3585(a), and requires the BOP to award prior custody credit for time served prior to commencement of the sentence which has not been credited against another sentence, see 18 U.S.C. § 3585(b).  Specifically, § 3585 provides, in relevant part:

> (a) **Commencement of sentence**.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) **Credit for prior custody**.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has

8

> spent in official detention prior to the
> date the sentence commences-
> (1) as a result of the offense for which the
> sentence was imposed; or
> (2) as a result of any other charge for
> which the defendant was arrested after the
> commission of the offense for which the
> sentence was imposed; that has not been
> credited against another sentence.

18 U.S.C. § 3585(a), (b).

In addition, 18 U.S.C. § 3584(a) gives a district court authority to decide whether federal prison terms should run concurrently with or consecutively to other prison sentences, see United States v. Gonzales, 520 U.S. 1, 6 (1997), and 18 U.S.C. § 3584(c) instructs that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." 18 U.S.C. § 3584 (c); see also Gonzales, 520 U.S. at 8.

In this case, the BOP aggregated Petitioner's 235-month term and his consecutive 188-month term by adding the terms together and treating them as one 423-month term.  The BOP determined that this aggregate sentence commenced on the first sentencing date (February 1, 2007) and that Petitioner was entitled to credit against this aggregate term for the 1,884 days he spent in custody prior to imposition of the first

9

sentence (from his arrest on December 5, 2001, through January 31, 2007, the day before the first sentence was imposed).

Petitioner does not argue that his terms were concurrent or contend that the BOP violated federal law when it aggregated them to result in a 423-month term. This Court finds that the BOP properly aggregated Petitioner's two sentences by treating them as one 423-month sentence running from the date of his first conviction, and properly granted him prior custody credit for all the time he spent in custody since his arrest on December 5, 2001.  See Goldberg v. Fraser, 229 F.App'x 107, 109 (3d Cir. 2007) (holding that, where Goldberg received two federal sentences, one for 125 months and another for 30 months, to be served consecutively, "[p]ursuant to 18 U.S.C. § 3584, these sentences should have been aggregated and treated as one 155-month sentence, running from the date of his first conviction with credit for any time he spent in custody awaiting his trial[.]")

Petitioner argues that, although Judge Leisure ordered the second sentence to be served consecutively to the first, Judge Leisure nevertheless intended to give him double credit for all the time he was detained prior to the second sentencing date on August 8, 2007.  Petitioner relies on the sentencing transcript

10

and claims that the transcript shows that Judge Leisure intended to give Petitioner credit on the second sentence, as well as the first sentence, for the time since his arrest on December 5, 2001, until the imposition of the second sentence on August 8, 2007.

The first problem with this argument is that the transcript does not support Petitioner's assertion that Judge Leisure intended to give him double credit.[3]  The second problem is that the BOP gave Petitioner credit against his aggregate 423-month term for the time he was detained since his arrest on December 5, 2001, and 18 U.S.C. § 3585(b) prohibits the BOP from granting Petitioner double credit for this time period.  See United States v. Wilson, 503 U.S. 329, 337 (1992) ("Congress made clear [in § 3585(b)] that a defendant could not receive a double credit for his detention time."); Blood, 648 F.3d at 209

---

[3] The transcript shows that Petitioner's attorney asked Judge Leisure when the sentence would begin to run and Judge Leisure stated:  "It may well be that as soon as he was arrested and he was in custody the time started to run.  Maybe the government can tell us."  (ECF No. 1 at 9.)  The attorney for the government then stated that the BOP would decide this issue.  This statement appears to this Court to be nothing more than the commonplace expression of a sentencing court that the exact contours of the start and end date of a federal sentence will be calculated by the BOP according to law.  That is precisely what happened in this case.

11

(holding that "§ 3585(b) prohibits double crediting"). This Court holds that the BOP did not abuse its discretion in calculating Petitioner's release date and will dismiss the Petition.

### III.  CONCLUSION

To summarize, Petitioner has not shown that the BOP abused its discretion in calculating his release date. The Court will dismiss the Petition for a Writ of Habeas Corpus. An appropriate Order accompanies this Opinion.

s/Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

Dated:  August 15, 2016

At Camden, New Jersey